***********
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Stephenson. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Stephenson with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. On October 3, 2002, Muhamed Lisica (hereinafter "Plaintiff") was struck by a motor vehicle while crossing the street to purchase a road map.
2. The parties are bound by and subject to the Workers' Compensation Act.
3. Defendant Travelers was the workers' compensation carrier for Beaufort Logistics Storage Company, L.L.C. (hereinafter "Beaufort") at all times relevant to this claim.
4. This is a claim for an injury by accident occurring on October 3, 2002.
5. The following stipulated exhibits were admitted into evidence:
a. Stipulated Exhibit #1 — Pre-Trial Agreement
b. Stipulated Exhibit #2 — Plaintiff's medical records
c. Stipulated Exhibit #3 — Employer's Quarterly Tax and Wage Report
d. Stipulated Exhibit #4 — 2002 W-2 Wage and Tax Statement
e. Stipulated Exhibit #5 — NC Apportioned License Cab Card
f. Stipulated Exhibit #6 — Fax from Mike Willard of Beaufort
g. Stipulated Exhibit #7 — Travelers' Final Audit of Beaufort
h. Stipulated Exhibit #8 — 2/4/03 cover sheet (Ron Toppin to Felicia Boyd)
i. Stipulated Exhibit #9 — Master Lease Agreement
j. Stipulated Exhibit #10 — 9/9/03 letter (Ron Toppin to Erin Eveson)
k. Stipulated Exhibit #11 — Oklahoma Certificate of Title
l. Stipulated Exhibit #12 — Application for MI Title and Registration
m. Stipulated Exhibit #13 — 2001 and 2002 W-2 forms
n. Stipulated Exhibit #14 — Travelers' Preliminary Audit of Beaufort
o. Stipulated Exhibit #15 — Dr. Catalano's 9/24/03 and 11/26/03 records
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was born December 5, 1950, and is a native of Sarajevo, Bosnia.
2. Plaintiff's native language is Bosnian, and plaintiff's ability to communicate in English is limited.
3. Plaintiff came to the United States in April of 1995.
4. Plaintiff has worked in shipping and transportation since coming to the United States, and has also attended truck driving school.
5. In October of 2000, Plaintiff was hired by Ron Toppin as a long-haul truck driver.
6. Plaintiff has not worked for anyone but Ron Toppin since October of 2000.
7. When Plaintiff started working for Ron Toppin, Mr. Toppin was an individual "doing business as" Faith Transportation (hereinafter "Faith").
8. In June of 2001, Mr. Toppin incorporated Faith as a limited liability company.
9. In 2001, Mr. Toppin also created and incorporated a second company named Beaufort Logistics Storage (hereinafter "Beaufort"), which he intended to set up as a storage company.
10. Beaufort never got off the ground as a storage company, and ended up functioning as a transportation company that did business along with Faith in the trucking industry.
11. Mr. Toppin ran Faith and Beaufort out of the same location, and used the same dispatchers and the same trucks for both companies. Both companies performed the same type of services for customers.
12. On July 26, 2001, Mr. Toppin applied for designation of an insurance company to provide workers' compensation insurance for Beaufort's employees.
13. On July 27, 2001, the North Carolina Rate Bureau designated Travelers Indemnity Company (hereinafter "Travelers") as the workers' compensation carrier for Beaufort, effective July 25, 2001.
14. Sometime after September 30, 2001, Travelers conducted a preliminary audit of Beaufort. During that audit, Travelers noted that Mr. Toppin owned another trucking firm, Faith, which operated out of the same address. Travelers also noted that there was possible interchange of labor between the two companies.
15. On or about September 27, 2002, Travelers conducted a final audit of Beaufort. During the final audit, Travelers noted that all of the trucks parked on their insured's yard said "Faith Transportation." On this date, Travelers requested a Certificate of Insurance from Faith, but did not obtain the Certificate of Insurance at that time.
16. Part Five, Section G of the Travelers workers' compensation policy that was issued to Beaufort provides that the information developed by audit is used to determine the final premium.
17. In Part Five, Section C of the Travelers workers' compensation policy that was issued to Beaufort, Travelers acknowledges that it could be liable for injuries incurred by non-officer and non-employee individuals performing work for Beaufort unless Travelers was given proof that the employers of those individuals "lawfully secured their workers' compensation obligations."
18. Plaintiff's average weekly wage was $2,343.77.
19. On October 3, 2002, plaintiff was transporting alcoholic beverages from Vermont to Pennsylvania per the instructions of Ron Toppin's dispatcher when he stopped his truck in New Jersey, got out, and crossed the street to get to a store in order to buy a road map to help him find his destination in Pennsylvania.
20. Plaintiff was struck by a car while crossing the street and sustained injuries, including a fractured leg. Plaintiff was taken to a New Jersey hospital by ambulance, where he underwent emergency surgery on his leg.
21. On October 3, 2002, Beaufort had workers' compensation insurance for its employees through Travelers.
22. After Plaintiff was discharged from the hospital, he returned to North Carolina, where he received follow-up care from Dr. McCarthy. Dr. McCarthy advised plaintiff to remain non-weight-bearing on his left leg through September 24, 2003.
23. On September 24, 2003, plaintiff returned to Dr. Catalano, the surgeon who repaired his left leg fracture. Dr. Catalano advised plaintiff that he should begin bearing weight on his left leg, but did not release plaintiff to return to work.
24. Plaintiff returned to Dr. Catalano on November 26, 2003, at which time Dr. Catalano indicated that plaintiff was not yet fully healed. Dr. Catalano did not release plaintiff to return to work at that time.
25. As of the date of the hearing before the deputy commissioner, plaintiff was unable to perform his regular duties as a truck driver, and plaintiff had not returned to work.
26. The greater weight of the evidence shows that Beaufort used Faith as a subcontractor for its transport and delivery contracts.
27. Beaufort failed to provide Travelers with a Certificate of Insurance issued by a workers' compensation carrier from Faith.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. "Any principal contractor, intermediate contractor, or subcontractor who shall sublet any contract for the performance of any work without requiring from such subcontractor a certificate, issued by a workers' compensation carrier stating that such subcontractor has complied with N.C. Gen. Stat. § 97-93 shall be liable to the same extent as such subcontractor would be if he were subject to the provisions of this Article." N.C. Gen. Stat. § 97-19. As Beufort failed to submit a Certificate of Insurance from Faith, Beaufort is liable for injuries sustained by employees of Faith as a statutory employer. Id.
2. On October 3, 2002, plaintiff suffered an injury by accident arising out of and in the course of his employment. N.C. Gen. Stat. § 97-2(6).
3. Plaintiff became disabled from work as a result of the October 3, 2002 injury by accident. N.C. Gen. Stat. § 97-2(9).
4. As a result of the compensable injury by accident, plaintiff is entitled to total disability compensation at the rate of $654.00 per week for the period beginning October 3, 2002, and continuing until further order of the Commission. N.C. Gen. Stat. § 97-29.
5. Plaintiff is entitled to have defendant Travelers pay for medical expenses incurred or to be incurred as a result of the compensable injury as may be required to provide relief, effect a cure, or lessen the period of disability. N.C. Gen. Stat. §§ 97-2(19); 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, defendant Travelers shall pay temporary total disability compensation to plaintiff at the rate of $654.00 per week for the period from October 3, 2002 and continuing until plaintiff returns to suitable employment, or until further order of the Commission. As much of said compensation as has accrued shall be paid in a lump sum.
2. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded to plaintiff in paragraph 1 above is hereby approved to be deducted from the amounts due Plaintiff and paid directly to Plaintiff's counsel. For future compensation, every fourth check shall be paid to Plaintiff's counsel.
3. Defendant Travelers shall pay medical expenses incurred or to be incurred when bills for the same have been approved, in accordance with the provisions of the Act.
4. Defendant Travelers shall pay the costs.
This the ___ day of January, 2005.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER